UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA B.,[1] <br><br> Plaintiff, <br> v. <br><br> FRANK BISIGNANO,[2] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:24-cv-04318-AJR <br><br> **MEMORANDUM DECISION AND ORDER** |

# I.

# INTRODUCTION

Carolina B. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge. (Dkts. 6, 8.) For the

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Commissioner Frank Bisignano is substituted in as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.
## PROCEDURAL HISTORY

On November 9, 2021, Plaintiff filed her application for DIB, alleging disability beginning on October 15, 2021. (Dkt. 10-6 at 2-19.) The Commissioner denied the claim by initial determination on March 25, 2022, (Dkt. 10-5 at 2), and upon reconsideration on August 26, 2022. (Id. at 14.) Plaintiff filed a written request for a hearing on October 18, 2022. (Dkt. 10-5 at 20.) On April 18, 2023, Administrative Law Judge James Carberry (the "ALJ") conducted a telephonic hearing[3] and subsequently published an unfavorable decision on May 24, 2023. (Dkt. 10-3 at 17-31, 40-56.) Plaintiff requested review of the ALJ's decision by the Appeals Council on July 21, 2023. (Dkt. 10-5 at 99-100.) The Appeals Council denied Plaintiff's request for review on April 3, 2024. (Dkt. 10-3 at 2-4.) On that date, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(h). Plaintiff now seeks review of the ALJ's final decision.

## III.
## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment

---

[3] The ALJ conducted the hearing telephonically due to the COVID-19 pandemic. (Dkt. 10-3 at 42-43.) Plaintiff was represented by an attorney at the hearing and agreed to conduct the proceeding telephonically. (Id.; Dkt. 10-5 at 55-56.)

2

must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. See 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. See Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. See id. at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),

416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.
## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Dkt. 10-3 at 17-31.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2021, the alleged disability onset date. (Id. at 26.) At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; cervical degenerative disc disease; bilateral knee osteoarthritis; bilateral calcaneal spurring; left ankle tenosynovitis; bilateral shoulder impingement; and bilateral Achilles tendinosis. (Id.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Id. at 27.)

The ALJ assessed Plaintiff's RFC and concluded that she could perform "light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can sit six hours in an eight-hour day; she can stand and/or walk six hours in an eight-hour day; she must never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance,

stoop, kneel, crouch, and crawl; she can frequently handle and finger; and she can occasionally reach overhead with the bilateral upper extremities." (Id. (bold omitted).)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re inconsistent with the medical evidence and other evidence in the record." (Id. at 28.) Further, at step four, the ALJ found that Plaintiff was "capable of performing past relevant work as a food demonstrator and merchandise distributor" and that the work did not "require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity. (Id. at 31 (bold omitted).) Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act since October 15, 2021. (Id.)

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. See Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at

1279). To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. See Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.
## DISCUSSION

Plaintiff raises two grounds for relief: (1) whether the ALJ's RFC accurately reflected the Plaintiff's limitations; and (2) whether the ALJ properly evaluated Plaintiff's subjective symptom complaints. (Dkt. 13 at 2-10.) For the reasons set for the below, the Court AFFIRMS the decision of the Commissioner.

### A.   The ALJ Properly Considered Plaintiff's Subjective Complaints.

Plaintiff asserts that the ALJ "cherry picked portions of the record to minimize the Plaintiff's subjective complaints." (Dkt. 13 at 6-10.) Specifically, Plaintiff contends that "[a] closer look at the functional report demonstrates that the Plaintiff is limited in her activities of daily living." (Id. at 7.) Plaintiff argues that "the activities . . . . the ALJ cites in undermining Plaintiff's credibility consist of limited activities that do not comprise a substantial portion of [the] day and are not transferable to a work environment." (Id. at 8.) Finally, Plaintiff contends that "[t]he ALJ fail[ed] to identify medical evidence that contradicts the Plaintiff's subjective complaints." (Id.)

#### 1.   Plaintiff's Subjective Symptom Complaints.

Plaintiff alleged that she is unable to work due to pain in her back, ankles, and feet. (Dkt. 10-3 at 47-48; Dkt. 10-7 at 13-15.) Plaintiff also alleged that she experiences difficulties lifting, carrying, standing, and walking for long periods.

(Dkt. 10-3 at 45; Dkt. 10-7 at 13-15.)  Plaintiff wrote in her "Exertion Questionnaire" that she experiences "heavy pain in her waist that limits chores and tasks." (Dkt 10-7 at 13.)  Plaintiff wrote that she cannot "lift more than [five] pounds past [five] minutes consecutively as it would cause discomfort and pain in [her] waist." (Id. at 14.)  Plaintiff described her pain as "a bag of sand on top of [her] waist where it will split in [two]." (Id. at 15.)  Plaintiff stated that she can only do household chores for "about an hour" before having to lie down.  (Id.)

### 2. Legal Standard.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  See Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id.  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  See Trevizo, 871 F.3d at 678; see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. See Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035m 1039 (9th Cir. 2008); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." (internal quotation marks omitted))." The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter, 806 F.3d at 493. Although an ALJ's

1  interpretation of a claimant's testimony may not be the only reasonable one, if it is
2  supported by substantial evidence, "it is not [the court's] role to second-guess it."
3  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 3. Analysis.

After considering the evidence, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Dkt. 10-3 at 28.) Thus, because the ALJ determined that there was medical evidence of an impairment that could reasonably produce the symptoms Plaintiff alleged, and because the ALJ did not make a finding of malingering, the ALJ was required to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. See Trevizo, 871 F.3d at 678.

The ALJ considered Plaintiff's testimony regarding disabling pain, but discounted this testimony based on inconsistencies with the objective medical evidence, Plaintiff's history of conservative treatment, and Plaintiff's daily activities. (Dkt. 10-3 at 28-30.) Specifically, the ALJ cited objective medical evidence that undermined Plaintiff's allegations of disabling pain including diagnostic imagining and examinations showing "minimal to mild multilevel lumbar spine degenerative disc disease" and normal alignment, (id. at 28 (citing Dkt. 10-8 at 17, 23)); "musculature around the foot . . . . within normal limits," (id. (citing Dkt. 10-8 at 77)); "mild osteoarthritis," (id. (citing Dkt. 10-8 at 73)); "low-grade Achillies tendinosis," (id. (citing Dkt. 10-8 at 75)); normal gait, (id. (citing Dkt. 10-8 at 73)); and normal range of motion, (id. (citing Dkt. 10-9 at 5)). The ALJ also cited to Plaintiff's conservative course of treatment which included physical therapy and medications, but not surgical intervention. (Id. at 28 (citing Dkt. 10-8 at 29, 109-115; Dkt. 10-9 at 5).) Finally, the ALJ noted the lack of evidence that Plaintiff

"required the use of an assistive device for ambulation." (Id.)

In rejecting Plaintiff's subjective symptom complaints, ALJ also cited the consultative orthopedic evaluation of Plaintiff by Dr. Warren Yu, the findings of which the ALJ characterized as "minimal and benign." (Id. at 29.)  Indeed, Dr. Yu found that Plaintiff exhibited back tenderness, diminished range of motion, and positive impingement sign. (Id. at 29 (citing Dkt. 10-8 at 104-108)).  Further, the ALJ cited Plaintiff's testimony regarding her daily activities which included driving, shopping in stores, doing the laundry, cleaning, and doing the dishes. (Id. (citing 10-7 at 13-15).)  At the hearing, Plaintiff testified that she shopped for groceries, filled her car with gas, cleaned the bathroom, and mopped. (Dkt. 10-3 at 45, 53-54.)  In her exertional questionnaire, Plaintiff wrote that she did household chores, washed dishes, did the laundry, swept, mopped, cleaned the bathroom, drove up to five miles, and shopped for groceries twice a week. (Dkt. 10-7 at 13-15.)

Plaintiff alleges that the ALJ's analysis amounts to cherry-picking of "portions of the record to minimize the Plaintiff's subjective complaints." (Dkt. 13 at 6.)  Further, Plaintiff argue that "the mere fact that a plaintiff has carried on certain daily activities does not detract from her credibility as to her overall disability." (Id. at 7 (citing Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)).)  Plaintiff argues that in fact, she is limited in her activities of daily living, and cites to the limitations Plaintiff described in her exertional report such as the need to take breaks throughout the day, and her limitation to driving a maximum of five miles. (Id. (citing Dkt. 10-7 at 13-15).)

While the Court agrees that Plaintiff's self-reporting does include some limits to her daily activities, the Court finds that the ALJ properly considered Plaintiff's daily activities as one factor in discounting Plaintiff's subjective complaints. Ghanim, 763 F.3d at 1163.  The ALJ also cited portions of Plaintiff's medical records and her conservative course of treatment in discounting her subjective complaints. (See Dkt. 10-3 at 28-30.)  For example, the ALJ noted the lack of

10

evidence "of atrophy in [Plaintiff's] extremities," the lack of evidence of "loss of muscle tone, bulk, mass, or strength that would be compatible with her alleged inactivity and inability to function," and the fact that "antalgic gait [was] noted only on a few isolated instances rather than consistently." (Id. at 29 (citing Dkt. 10-8 at 29, 73; Dkt. 10-9 at 5).) Further, the ALJ noted that Plaintiff's "treatment regimen was conservative and the case record is devoid of evidence of persistent attempts to obtain relief [from her] symptoms, such as trying a variety of treatments, referrals to specialists, or changing treatment sources." (Id. at 30.)

Indeed, Plaintiff's testimony and medical records reflect that she was treated only with medications and physical therapy, and that she declined more aggressive interventions. (Dkt. 10-3 at 54 ("Q: [H]ave your doctors recommended any other type of treatments in order to help with your symptoms? . . . . have they recommended any injections, epidural injections, or surgery? A: . . . . The injections, they suggested it, but I told them . . . . I don't have a lot of confidence in those injections."); Dkt. 10-9 at 6 ("Declined injections today").) Finally, the ALJ cited the absence of any explanation in the record for Plaintiff "not seeking treatment consistent with the degree of subjective complaints." (Dkt. 10-3 at 30.) This was an additional valid basis for discounting Plaintiff's subjective complaints. Ghanim, 763 F.3d at 1163 ("An ALJ may consider a range of factors in assessing credibility, including unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." (internal quotation marks omitted)). Accordingly, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's testimony about her subjective symptom severity, including inconsistencies with the objective medical evidence, a conservative course of treatment, and Plaintiff's daily activities. See Trevizo, 871 F.3d at 678. Thus, the Court finds no grounds for remand in the ALJ's rejection of Plaintiff's subjective complaints.

### B.  The ALJ Did Not Err In Formulating the RFC.

Plaintiff contends that the ALJ's RFC formulation did not accurately reflect the Plaintiff's limitations. (Dkt. 13 at 4-6.) Plaintiff argues that her medical conditions, including lumbar degenerative disc disease, bilateral knee osteoarthritis, bilateral calcaneal spurring, left ankle tenosynovitis, and bilateral Achilles tendinosis would limit her to standing for six hours during an eight hour work shift. (Id. at 4.) Plaintiff contends that a "reasonable interpretation" of Plaintiff's medical records would be that Plaintiff's "impairments to her lower back, knees, and ankles have reduce[d] her ability to stand for extended periods of time, much less six hours per day." (Id. at 5.) Finally, Plaintiff contends that "[a]t a minimum, [she] would need the option to sit/stand at will in order to temporarily relieve her pain and discomfort," and that "per the vocational expert, a sit/stand option would preclude Plaintiff's past relevant work." (Id.)

#### 1.  The ALJ's RFC Determination.

The ALJ assessed Plaintiff's RFC and concluded that she could perform "light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can sit six hours in an eight-hour day; she can stand and/or walk six hours in an eight-hour day; she must never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can frequently handle and finger; and she can occasionally reach overhead with the bilateral upper extremities." (Id. (bold omitted).)

#### 2.  Legal Standard.

In social security appeals, the ALJ alone determines a claimant's RFC after consideration of "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician to determine residual functional capacity."); McLeod v. Astrue, 640 F.3d 881, 884-85

(9th Cir. 2011).

In formulating an RFC, the ALJ weighs medical opinions, non-medical source opinions, and the claimant's credibility.  See Bray, 554 F.3d at 1226; see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").  An ALJ need not adopt any one medical opinion, but instead translates the claimant's physical condition into work-related restrictions and functions.  See Ly v. Colvin, 2014 WL 4795044, at *11 (E.D. Cal. Sept. 25, 2014) (citing Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008)).

An ALJ may not make proprietary determinations regarding the claimant's condition not reflected in the medical evidence.  See, e.g., Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Javier A. G. v. Saul, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) ("[A]n ALJ may not substitute his or her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion.").

### 3. Analysis.

Plaintiff argues that the ALJ erred in determining the RFC because the RFC "ignores [Plaintiff's] subjective complaints."  (Dkt. 13 at 5.)  However, as explained above, the Court has determined that the ALJ properly rejected Plaintiff's subjective complaints.  Next, Plaintiff argues that a "reasonable interpretation" of the findings in Plaintiff's medical records would be that "Plaintiff's impairments to her lower back, knees, and ankles have reduce[d] her ability to stand for extended periods of time, much less six hours per day." (Id.)  Thus, Plaintiff contends that "[a]t a minimum, [she] would need the option to sit/stand at will in order to temporarily relieve her pain and discomfort." (Id.)

13

Without endorsing Plaintiff's alternative interpretation, the Court finds that the ALJ's limitation in the RFC to six hours of standing in an eight-hour day to be a reasonable interpretation of the objective medical evidence. As detailed above, the ALJ cited to ample objective medical evidence, as well as portions of Plaintiff's own testimony, that undermined her allegations of disabling pain. For example, the ALJ cited to the mild findings in the report of the consultative orthopedic examiner Dr. Yu, in supporting his RFC limitation. (See Dkt. 10-3 at 28-29 ("Dr. Yu noted that [Plaintiff's] motor strength was intact in the upper and lower extremities.") (citing Dkt. 10-8 at 104-108).) The ALJ also noted the lack of evidence that Plaintiff "required the use of an assistive device for ambulation." (Id. at 28.)

Moreover, the Court notes that two state agency physicians and two consultative physicians all found that Plaintiff could stand and/or walk for six hours in an eight-hour day. (Dkt. 10-4 at 30, 44; Dkt. 10-8 at 63, 107.) The Ninth Circuit has held that "where the record would support more than one rational interpretation, [the Court must] defer to the ALJ's decision." Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005); see also Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020) ("Resolving conflicts is the ALJ's responsibility and prerogative . . . [where] the ALJ's interpretation of the evidence is rational, it must be upheld." (internal quotations and citations omitted)). Therefore, because the ALJ's RFC determination is supported by substantial evidence in the record, the Court declines to disturb the ALJ's rational interpretation of the medical evidence. Thus, the ALJ's RFC determination does not merit remand.

\\

\\

\\

# VII.
# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 7, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE